# SUPREME COURT.

JOHN G. ALSHEIMER, appellant, agt. JACOB KROHN, respondent.

The statute of 1860, allowing a tenant to abandon the demised premises when they become untenantable without any fault of his, does not apply to the letting of the premises with a full knowledge that the premises are to be rendered untenantable, and with a view to occupancy while in that condition.

*Fourth Department General Term, Rochester, April,* 1873.
*Before* MULLIN, *P. J.,* E. DARWIN SMITH *and* TALCOTT, *Justices.*

THIS action was commenced before a justice of the peace of the county of Oneida, to recover of defendant sixteen dollars for the rent of a part of plaintiff's house in the city of Utica.

S. J. BARROWS, *for appellant.*

I. The county court cannot reverse the judgment of the justice for reasons or on grounds not pointed out or stated in the notice of appeal. The onus of showing error is with the appealing party; and no sufficient ground is stated on the notice of appeal to the county court to raise the question, or justify the county court in reversing the judgment of the justice for the reason stated in its opinion (*Avery* agt. *Woodbick,* 62 *Barb.,* 557; *Bush* agt. *Dennison,* 14 *How. Pr. R.,* 310; *Cole* agt. *Bell,* 48 *Barb.,* 194).

II. The only defense set up in the answer by the defendant is that of an eviction; and to sustain this defense the evi-

dence must show and the justice must find that the acts of the plaintiff were wrongful and done without right, and without the permission of the defendant, and for the purpose of depriving the defendant of the premises (*Christopher* agt. *Austin*, 11 *N. Y.*, 216, 218; *Lawrence* agt. *French*, 15 *Mass. R.*, 268; 25 *Wend.*, 442, 444; *Lounsbery* agt. *Snyder*, 31 *N. Y.*, 514, 516, *and cases there cited*).

1. If the moving of the building had been done by the plaintiff without the consent of the defendant, it would not have amounted to an eviction. It would, at the most, be only a trespass.

2. "An eviction is something more than a mere ordinary trespass; it must be something of a permanent character, done by the landlord, with the intention of depriving the tenant of the enjoyment of the whole or a part of the premises; and it is for the jury to say whether it was done with that intention" (1 *Wait's L. & P.*, 290; *Peck* agt. *Hiler*, 31 *Barb.*, 117, 120, *and cases there cited; Vanderpool* agt. *Smith*, 1 *Daly*, 311).

3. In this case the justice, who acted in the place of the jury, has found as a fact, by his judgment, that there was no eviction; and the case shows, and the justice, by his judgment, has so found the fact to be, that, after he knew the plaintiff was obliged to move the building in which the rooms were situated, and with full knowledge of all the facts in that respect, the defendant, in consideration that the plaintiff would let him have them at the same rent, and furnish him sufficient coal to burn during the time the building was in process of being moved, agreed to rent, stay and remain in the rooms as he had done before, and to pay the agreed rent therefor. We submit, therefore, that an eviction cannot be claimed by the defendant for the acts of the plaintiff, which were done by the special consent and agreement made with the defendant that they might be done.

4. The defendant, after he made the agreement to stay in the building and pay the agreed rent, actually remained in

the rooms several days, and used the plaintiff's coal under the contract, and as was agreed he should do, and then left without the consent of the plaintiff.

5. If we concede that the renting, in the outset, was as claimed by the defendant, yet he would have the right to make a new and modified agreement, when it was found the house was to be moved, and to agree to rent the rooms, and use and occupy them just as he had done, and as they would be situated while the house was being moved; and if this be so, then the defendant could not set up an eviction, and abandon the rooms and contract, after the parties had entered upon its performance, and tender back the key, without the consent of the plaintiff, and thus avoid the payment of the stipulated rent.

III. The defendant cannot now claim that the premises became untenantable by the house being moved, and that thereby he had a right, under chapter 345 of the laws of 1860, p. 592, to abandon the same, and be excused from the payment of the rent, for the reasons:

1. No such defense is set up in his answer.

2. No motion for a nonsuit was made before the justice, nor was that question, or the question that the agreement was not in writing, in any way raised by the defendant on the trial; nor was the question raised that plaintiff could not recover if the facts were as proved by him.

3. The county court could not reverse the judgment of the justice for the insufficiency of evidence in the court below, or on a question not in any way suggested, or raised on the trial before the justice, and the ground on which the county court reversed the judgment of the justice in this case has not at any time been passed upon by the justice. There is no judgment of the justice on that question (2 *Wait's L. and P.*, 636, *and cases there cited; Abernethy* agt. *Church, &c.,* 3 *Daly,* 1, 9, *and cases there cited; Talcott* agt. *Rosenberg, id.,* 204, 211; *Duffy* agt. *Thompson,* 4 *E. D. Smith,* 178; *Willard* agt. *Bridge,* 4 *Barb.,* 361; *Merritt* agt. *Thompson,*

Alsheimer agt. Krohn.

1 *Hilton*, 550, 361; 5 *N. Y.*, 492; *Smith* agt. *Hill*, 22 *Barb.*, 656).

4. If the question upon which the county court reversed the judgment below had been raised before he justice, the plaintiff would have produced the agreement in writing required by the statute, or could have withdrawn the action; and, it not having been suggested or raised, the plaintiff had a right to and did assume that no such question was in the case (*Smith* agt. *Hill*, 22 Barb., 657).

5. This court will not favor a deceptive, secret or unfair mode of raising an objection or question in the case, and therefore all such objections or questions as could have been fairly met or answered, if they had been raised or made in the court below, will be disregarded on appeal (2 *Wait's L. and P.*, 634, *and cases there cited; Coon* agt. *Syracuse and Utica R. R.*, 1 *Seld.*, 492, 531; *Barnes* agt. *Perrin*, 2 *Kernan*, 18; 47 *Barb.*, 523; 34 *N. Y.*, 383).

IV. The act of 1860, chapter 345, does not affect this case. That statute was only intended to apply to cases where, at common law, the tenant was bound to pay the rent, though the premises had been in fact destroyed (*Bloomer* agt. *Merrill*, 29 *How. Pr. R.*, 259, *and opinion of the court, p.* 262).

1. The acts of the landlord must amount to an eviction (*Fosh* agt. *Kavanaugh*, 24 *How. Pr. R.*, 347).

2. And in this case there was no eviction.

3. All the acts of the defendant were done by tne express agreement and consent of the defendant.

4. There is no evidence to show that the premises were untenantable when the defendant left them, and if they became so after he left them, that will not excuse him from the payment of the rent (*Murray* agt. *Waller*, 42 *How. Pr. R.*, 64).

V. The fact that the case does not show that the defendant's agreement to pay the rent was in writing, we submit, cannot benefit the defendant here.

1. Because no such question was made, or in any way

Alsheimer agt. Krohn.

raised before the justice (*see cases cited under third subdivision of point* 3; *Code*, § 366; 49 *Barb.*, 146; 31 *N. Y.*, 480).

2. The defendant, on a sufficient consideration, made a new and modified contract to rent the rooms, and agreed to rent the same and pay the rent after he knew and had full notice from the plaintiff that the building was to be moved; and having thus agreed, knowing that the building was to be moved, we insist it is not a case within the statute of 1860.

3. But if it is to be held that it is a case within that statute, then we say that the statute was intended to confer a benefit on the defendant, and that " a party can always waive and renounce a benefit which the law gives him, even when the right is created by statute" (1 *Wait's Law and Practice*, 842; *Tombs* agt. *Rochester and Syracuse R. R.*, 18 *Barb.*, 583; *Baker* agt. *Braman*, 6 *Hill*, 47; *Phyfe* agt. *Eimer*, 45 *N. Y.*, 102, 104, *and cases there cited*).

VI. We submit that the judgment of the county court should be reversed, and that of the justice affirmed.

J. W. Boyle, *attorney;* Joel Willard, *counsel for respondent.*

I. The premises, when the plaintiff commenced to remove the house, became and were by reason of such removal untenantable and unfit for occupancy, and this by the act of the plaintiff, and without fault of defendant.

1. Acts less injurious to premises than such as are admitted in this case, have been declared to render them untenantable (*Dyett* agt. *Pendleton*, 8 *Cow.*, 727; *Cohen* agt. *Dupont*, 1 *Sandf.*, 260).

2. Being so rendered untenantable, the defendant had a right to terminate his tenancy, and thereupon be relieved from the further payment of rent, unless he had by written agreement consented to remain and pay rent (*Laws of* 1860, *p.* 592; *Murray* agt. *Waller*, 42 *How.*, 64; *Lewis* agt.

*Payne,* 4 *Wend.,* 423; *Edgerton* agt. *Paige,* 20 *N. Y.,* 283; *Lounsbury* agt. *Snyder,* 31 *id.,* 514; *Christopher* agt.*Austin,* 11 *N. Y.,* 216).

II. There was no written agreement in this case, as required by the laws of 1860, p. 592, for the payment of rent; therefore the lessee had the right to quit and determine his liability to pay rent (*Laws of* 1860, *p.* 592; *Murray* agt. *Waller,* 42 *How.,* 64).

III. The removal of the house by the plaintiff was an eviction of the defendant, by rendering it untenantable. This was without fault of defendant (*Rogers* agt. *Ostrom,* 35 *Barb.,* 523; *Ogilvie* agt. *Hull,* 5 *Hill,* 52; *Cohen* agt. *Dupont,* 1 *Sandf.,* 260).

IV. To entitle the plaintiff to a recovery in this case, it is incumbent on him to show a contract such as is required by the statute, *i. e.,* a written contract. No such contract is shown, but on the contrary it is conceded there was none; therefore tho plaintiff fails to make out a cause of action against the defendant.

V. It is conceded that from the time of the purchase of the premises by the railroad company, there was no obligation on the part of the defendant to stay. As evidence, the conversation in August with reference to a further contract to stay.

VI. A public statute need not be recited or even referred to in a pleading; it is sufficient if the case is brought within it (*McHarg* agt. *Eastman,* 7 *Rob.,* 137; *Bayard* agt. *Smith,* 17 *Wend.,* 88; *Cole* agt. *Jessop,* 10 *How.,* 524; *Nellis* agt. *N. Y. C. R. R. Co.,* 30 *N. Y.,* 505; *Swinnerton* agt. *Col. Ins. Co.,* 37 *id.,* 189).

This case was brought within the statute of 1860 by the plaintiff's own showing:

" The lessees or occupants of any building which shall, without any fault or neglect on their part, be destroyed, or be so injured by the elements, or any other cause, as to be untenantable and unfit for occupancy, shall not be liable or

bound to pay rent to the lessors or owners thereof, after such destruction or injury, unless otherwise expressly provided by written agreement or covenant, and the lessees or occupants may therefore quit and surrender possession of the leasehold premises, and of the land so leased or occupied" (*Laws of* 1860, *p.* 592).

VII. It is of no consequence what rendered the premises untenantable and unfit for occupancy, whether by eviction by the plaintiff or otherwise, so long as the fact existed, and that without fault of defendant, and the allegation in the answer of an eviction by the plaintiff is a sufficient allegation that the premises were rendered untenantable and unfit for occupancy (*Cohen* agt. *Dupont*, 1 *Sandf.*, 260).

VIII. Objections may be urged on an argument at a general term, which were not raised on the trial, if they are such as could not have been obviated at the trial (*Pepper, adm'r,* agt. *Haight,* 20 *Barb.*, 429 ; *Lawrence* agt. *Barker,* 5 *Wend.*, 301; *Doane* agt. *Eddy,* 16 *id.*, 522; *Ford* agt. *Monroe,* 20 *id.*, 210 ; *Partridge* agt. *Thayer,* 2 *Sandf.*, 227, 228 ; *Smith* agt. *Floyd,* 18 *Barb.*, 527 ; *Merritt* agt. *Seaman,* 6 *N. Y.*, 168).

IX. The defendant's notice of appeal from the judgment of the justice to the county court was sufficient. It conferred jurisdiction on such court to examine the whole case as set forth in the return ; to see if any error had been committed for which the judgment should be reversed.

The office of the notice of appeal is to confer jurisdiction on the appellate court. That done, the appellate court may review any and every error appearing upon the record returned (*Forman* agt. *Forman,* 17 *How.*, 255 ; *Cole* agt. *Bell,* 48 *Barb.*, 196, 197 ; *Webster* agt. *Hopkins,* 11 *How.*, 140, 146 ; *Partridge* agt. *Thayer,* 2 *Sandf.*, 228; 2 *Wait's Law and Practice,* 781).

X. The return of the justice is the record in this case, and those matters which belong to it must be free from error, or the unsuccessful party may avail himself of the objection in

the higher court, and whenever objections are apparent on
the record which go to the merits of the case, they may and
ought to be taken by the appellate court, although not raised
in the court below (*Sanford* agt. *Granger*, 12 Barb., 392;
*Mills* agt. *Thursby et al.*, 12 *How.*, 394).

XI. Where the objection is one which the opposite
party could not have answered by further evidence, or by
any act on his part, the objecting party may raise it for the
first time on an appeal (*Tift* agt. *Tift*, 4 *Denio*, 175; *New-
come* agt. *Clark*, 1 *id.*, 226; *Pike* agt. *Gandall*, 9 *Wend.*,
149; *Hemford* agt. *Artcher*, 4 *Hill*, 276; *Pepper* agt.
*Haight*, 20 *Barb.*, 429).

XII. The judgment of the county court should be accord-
ing to the justice of the case, without regard to technical errors
or defects which do not affect the merits (*Code*, § 366; *Osin-
cup* agt. *Nichols*, 49 *Barb.*, 145).

XIII. The justice received improper evidence upon the
trial, objected to by the defendant.

XIV. The judgment of the justice is against the evidence
given on the trial, and that upon the whole evidence the
plaintiff was not entitled to recover. The judgment is con-
trary to law upon the facts proved, and that the justice erred
in not rendering judgment for the defendant.

XV. It is respectfully submitted that the judgment of the
county court should be affirmed with costs.

*By the Court,* MULLIN, *P. J.*—The plaintiff owned the
house, and had rented a part of it to the defendant at eight
dollars per month. Defendant occupied it from May, 1870,
until the 12th September, 1871.

In August, 1871, plaintiff sold the lot on which the house
stood to a railroad company, reserving the dwelling-house.
After making the sale, he testifies that he informed defendant
that he had made the sale, that he intended moving the house
to a lot some fifty rods distant, and that he intended to remain

in the house while it was being moved; and he asked defendant if he wished to stay, and he agreed to do so.

In a short time, the men employed to remove the house commenced to do so, and before it was entirely off from the foundation, defendant with his family left, tendering rent that had accrued up to that time, which plaintiff refused to accept.

About the 26th October, the defendant tendered to plaintiff the key, and he refused to take it, and then brought this action for rent for two months, or up to the 1st November.

Several witnesses were called on the part of the defendant, who contradicted the plaintiff and his witnesses, and swear to an entirely different agreement.

The justice believed the plaintiff's version of the transaction, and rendered judgment in favor of the plaintiff for sixteen dollars, and costs.

The defendant appealed to the county court, by which court the judgment was reversed, and the plaintiff appealed to this court.

The county court did not assume to reverse the judgment of the justice because of an erroneous finding of the facts. The defendant had the greater number of witnesses testifying to his version of the transaction, but we cannot say that they were as worthy of credit as the smaller number on the part of the plaintiff. The justice had the best means of judging of the credit to be given to each, and a very clear case must be made of error in his finding of the facts before any court sitting in review can disregard his finding.

The judgment of the justice was reversed by the county court on the sole ground that the defendant had the right, under section 1, chap. 345 of the laws of 1860, to abandon the premises and not be longer liable for the rent, as the premises rented were so injured as to become untenantable, and not being otherwise expressly provided by written agreement or covenant. With all respect to the opinion of the learned judge, it seems to me the statute has no application to the case.

Alsheimer agt. Krohn.

The statute applies to cases in which the premises, without fault of the lessee, have been so injured as to become untenantable after the lease was made, and where the tenant was bound to pay rent notwithstanding the injury to the premises.

In other words, the statute has no application to a letting to a tenant with the view to occupancy by him during such dilapidation.

The tenant was told he was at liberty to leave, as the building was to be removed. Knowing that, he agreed to remain in possession and to pay rent.

When the premises are let when in tenantable condition and afterwards destroyed, there is manifest propriety in permitting him to abandon them when they become unfit for use, and in relieving him from rent.

If rented with full knowledge that the premises are to be rendered untenantable and with a view to occupancy while in that condition, it would be unjust to enable the tenant to escape under this statute which was never intended to apply to such a case.

The judgment of the county court should be reversed, and and that of the justice affirmed.